By the Court,
Nelson, Ch. J.
The question arising upon the demurrer is, whether Comfort’s self-destruction in a fit of insanity can be deemed a death by his own hand, within the meaning of the policy. I am of opinion that it cannot. Since the argument of the case I have examined many precedents of life-policies used by the different insurance companies, and am entirely satisfied that the words in the policy in question import a death by suicide. Provisos declaring the policy to be void in cage the insured commit suicide, or die by his own hand, are used indiscriminately by different insurance companies as expressing the same idea; and so they are evidently understood by the writers upon this branch of the law. The policies of the “ Society for Equitable Assurances upon Lives” and of the “ Crown Life Assurance Company” contain the same form of expression as that employed in the policy in question j (Ellis on Ins. 230,234;) and Mr, Ellis refers to the phraseology as importing the usual condition to be found in all policies, though a majority of them probably use the word suicide, (Id. 102.) That word is used in the policies issued by the following companies, viz. the “ Royal Exchange and London Assurance,” the “Westminster Society,” the “Equitable Assurance,” the “ Pelican Life Insurance,” (Marsh, on Ins. 780,) and the “ Sun Life Assurance (2 McCull. Com. Dict. 93, 94, Am. *75 ed. ;) and it is said by the American editor of the book last cited, (p. 95, note,) that the policies issued in this country contain the same phraseology. (See also 3 Kent’s Com. 369.) Mr. Selwyn mentions several of the insurance companies above named, and others, including those whose policies contain the same words as the one in question, and speaks of the proviso as meaning, in all cases, an act of suicide. (2 Selw. N. P. by Wheaton, 788 to 790, Am. ed. of ’23 ; see also Smith’s Merc. Law, 256.)
The connection in which the words stand in the policy would seem to indicate that they were intended to express a criminal act of self-destruction ; as they are found in conjunction with the provision relating to the termination of the life of the insured in a duel, or by his execution as a criminal. This association may well characterise and aid in determining the somewhat indefinite and equivocal import of the phrase. Speaking legally also, (and the policy should be subjected to this test,) self-destruction by a fellow being bereft of reason, can with no more propriety be ascribed to the act of his own hand, than to the' deadly instrument that may have been used for the purpose. The drowning of Comfort was no more his act, in the sense of the law, than if he had been impelled by irresistible physical power; nor is there any greater reason for exempting the company from the risk assumed in the policy, than if his death had been occasioned by such means. Construing these words, therefore, according to their true, and, as I apprehend, universally received meaning among insurance offices, there can be no doubt that the termination of Comfort’s life was not within the saving clause of the policy. Suicide involves the deliberate termination of one’s existence, while in the possession and enjoyment of his mental faculties.' Self-slaughter by an insane man or a lunatic is not an act of suicide within the' meaning of the law. (4 Bl. Com. 189. 1 Hale’s Pl. C. 411, 412.) I am of opinion, therefore, that the plaintiffs are entitled to judgment on the demurrrer.
Ordered accordingly.